MAILED TO COUNSEL / LITIGANT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
GARRY KIRKLAND,  :
 :   09 Civ. 10235 (LAP)(KNF)
            Plaintiff, :
 :   ORDER ADOPTING REPORT &
      v. :   RECOMMENDATION
 :
CABLEVISION SYSTEMS, :
 :
            Defendant. :
------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

   Plaintiff Garry Kirkland ("Kirkland" or "Plaintiff") brought this action pro se against his former employer Cablevision Systems New York City Corporation ("Cablevision" or "Defendant")[1] pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); Section 296(1) of the New York Executive Law (the "New York State Human Rights Law" or "NYSHRL"); and Section 8-107 of the New York City Administrative Code (the "New York City Human Rights Law" or "NYCHRL").

   The parties filed cross motions for summary judgment [dkt. nos. 33 & 52] and on October 14, 2011, Magistrate Judge Fox issued a Report and Recommendation (the "Report") [dkt. no. 55] denying Plaintiff's motion in all respects

---

[1] Defendant is identified in Plaintiff's amended complaint as "Cablevision Systems."

1

and granting Defendant's motion, in part, and denying it, in part. (Report at 33.) Specifically, in addition to Judge Fox's recommendation that Plaintiff's motion be denied in its entirety, the Report recommended that summary judgment be granted in favor of Defendant on Plaintiff's "time-barred claims as well as his Title VII and New York State Human Rights Law claims of race-based termination, hostile work environment[,] and unequal treatment" and that Defendant's motion be denied "as it pertains to the [P]laintiff's retaliatory discharge claim and all the claims he has asserted under the New York City Human Rights Law." Id. Having reviewed the Report as well as the parties' objections and responses and having nonetheless found Judge Fox's decision to be correct and appropriate upon de novo review, see Fed. R. Civ. P. 72(b), the Report is hereby ADOPTED.

The standard for summary judgment set forth in the Report is uncontroversial but is expanded upon here in light of certain objections by Plaintiff. Plaintiff objects repeatedly to the Report's characterization of some background facts as "undisputed," yet he fails to articulate specifically why now labeling those particular facts as disputed should undermine the Report's recommendations. (See Pl.'s Mem. of Law in Support of His

2

Objections [dkt. no. 61] ("Pl.'s Objs.") at 5-7, Pl's Reply to Def.'s Response to Pl.'s Objs. [dkt. no. 65] at 11-14.) As the Report explains, the threshold inquiry is not whether certain facts are in dispute but whether there exists a genuine issue of material fact. (Report at 18.) "[E]ven in the fact-intensive context of discrimination cases," "[i]t is now beyond cavil that summary judgment may be appropriate." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001), cert. denied, 534 U.S. 993 (2001); see also Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000) (instructing that "trial courts should not 'treat discrimination differently from other ultimate questions of fact'") (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)). Accordingly, a plaintiff alleging Title VII discrimination claims "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts . . . or defeat the motion through mere speculation or conjecture." Jones v. Hirschfeld, 348 F. Supp. 2d 50, 59 (S.D.N.Y. 2004).

Rather, Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

3

trial." Celotex, 477 U.S. at 322. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986) (internal citations omitted). In the face of insufficient evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In accordance with this standard, the Court agrees that Plaintiff's race-based termination claims under Title VII and the NYSHRL must fail. Plaintiff did not offer specific timely objections to this part of the Report, but even if he had, the facts Plaintiff seeks to re-characterize as disputed do not overcome the non-discriminatory reasons proffered by the Defendant for Plaintiff's termination. His merely asserting them to be "pretext" does not make them so. See Jones, 348 F. Supp. 2d at 59.

Plaintiff also objects to the Report's analysis of his disparate treatment claim. To state a prima facie case for

4

disparate treatment discrimination, Plaintiff must demonstrate: (1) membership in a protected class; (2) that he was qualified for his position; (3) that he experienced an adverse employment action; and (4) that circumstances surrounding the adverse employment decision give rise to an inference of discrimination. See Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006). Claims of disparate treatment are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See id. If Plaintiff establishes a prima facie case, Defendant may proffer a legitimate, non-discriminatory reason for the alleged adverse employment action. If Defendant meets this burden, Plaintiff must then establish, by a preponderance of the evidence, that Defendant's stated reasons are merely pretext for discrimination. See id.

Upon review, however, Plaintiff's objections are meritless. In addition to rehashing arguments rejected by the Report, Plaintiff asserts that the Report fails to consider evidence that his white predecessor was permitted to use a lower volume store as his home base as sufficient to establish the fourth element of a prima facie case. While the Plaintiff is correct that the Report does not specifically note this claim, Plaintiff's concerns are

5

covered by the Report's general conclusion, upon consideration of all Plaintiff's evidence, that "he has not presented evidence establishing the criteria under which other AOMs were evaluated or the criteria [Defendant] employed for designating home base stores" and that such "evidence is needed to assess whether, in the circumstance of this case, an inference of discrimination may be drawn either from an inconsistent application of the criteria among white and black AOMs or a failure to employ the criteria at all with respect to the white AOMs." (Report at 29-30.) Even taking Plaintiff's contention regarding his predecessor as true, it is mere conjecture and speculation without more considering the amount of time between his predecessor's departure in 2004 and the denial of Plaintiff's request in 2008.

Additionally, the Court agrees with the Report's analysis under the McDonnell Douglass standard of Defendant's proffered reasons for disparity in salary among Cablevision AOMs, Report at 30-31, and declines to entertain Plaintiff's apparently new claim for relief under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), for disparate pay on account of his sex, see Pl.'s Objs. at 3. Throughout this case, Plaintiff's allegations have been limited to claiming that he was discriminated against on

6

account of his race and that he was retaliated against for engaging in protected activity. At this stage in the proceedings, Plaintiff is not entitled to assert an entirely new theory of liability that was never pleaded or briefed. See, e.g., Columbia Pictures Indus., Inc. v. Screen Gems Film Co., Inc., 2001 WL 1254838, at *9 (S.D.N.Y. Oct. 18, 2001).

Furthermore, this Court agrees with the Report's analysis and conclusions regarding Plaintiff's hostile work environment claim, including its conclusions about the evidence regarding statements made by Bob Cockerill after Plaintiff's termination, as recounted in the deposition testimony of Kathryn Nivins. (Report at 25-28.) On their face, Cockerill's comments to Nivins are race neutral. As the Report points out, "[Nivins] testified at her deposition that she did not understand what Cockerill meant . . . and she did not ask him to explain them." (Report at 27.) While Plaintiff is correct that "employers rarely shout from the roof-tops [sic] their intentions to discriminate against employees," this does not absolve Plaintiff of the burden to present sufficient evidence to elevate his interpretation of the comments attributed to Cockerill to a level beyond mere conjecture or speculation in order to survive summary judgment.

7

Finally, the Court also agrees with the Report's recommendations that Plaintiff's retaliatory discharge and NYCHRL claims survive. In order to survive summary judgment on a Title VII retaliation claim, Plaintiff must offer sufficient evidence to permit a reasonable jury to find that (1) he engaged in a protected activity known to Defendant; (2) Defendant took an adverse employment action against him; and (3) that "a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester Cnty Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (citation omitted). Retaliation claims also are analyzed under the McDonnell Douglas burden-shifting framework. Plaintiff's NYCHRL claim is analyzed using a substantially similar, though more liberalized framework. See, e.g., DeMarco v. CooperVision, Inc., 369 Fed. Appx. 254, 255 (2d Cir. 2010); Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 33-34 (1st Dep't 2009).

As for Defendant's objections to the Report's recommendations on the retaliatory termination claim, although Defendant's apparent willingness to "[give] Plaintiff . . . another chance with a new manager," (Def.'s Memo. of Law in Support of Its Objections ("Def.'s Objs.")

8

at 9), after one of his complaints may suggest the absence of retaliatory animus, that Plaintiff continued his duties under a new manager but was still later subjected to retaliatory termination is not beyond the realm of possibility as a matter of law.  Additionally, though the Report only briefly addresses the causal element of a retaliation claim, Plaintiff has satisfied the threshold here.  As explained in Gorzynski v. JetBlue Airways Corp., the Court of Appeals "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation," and it has specifically "held that five months is not too long to find the causal relationship."  596 F.3d 93, 110 (2d Cir. 2010) (citing Gorman Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 555 (2d Cir. 2001)).  As Defendant acknowledges, some of Plaintiff's alleged complaints occurred within five months of his formal termination in December 2008.  (Def.'s Objs. at 8.)  While the exact number of complaints lodged by Plaintiff, the dates of those complaints, and the content of the same may eventually come to bear on Plaintiff's ability to show causation at trial, such remain in dispute between the parties and are genuine issues of material fact beyond the

purview of this Court when considering a motion for summary judgment.

As for Plaintiff's NYCHRL claims, Defendant mischaracterizes the Report as relying solely on Albunio v. City of New York, 16 N.Y.3d 472 (2011), a case decided after the parties submitted their papers on summary judgment. The Report merely uses a phrase from Albunio to summarize the portion of the New York City Administrative Code, § 8-130, it had just quoted. (See Report at 32.) The fact that the NYCHRL must be viewed more broadly than its federal and state counterparts predates the parties' motions for summary judgment. See Williams, 872 N.Y.S.2d at 31-34 (a case also cited in the Report at 21 n.4). Whereas Defendant urges the Court to hold that Plaintiff abandoned the argument that Title VII and the NYSHRL represent "a floor below which the [NYCHRL] cannot fall, rather than a ceiling above," see id. at 31, the Court refuses to accept Defendant's invitation to harness a pro se Plaintiff with a heightened standard for analyzing his NYCHRL claims. Therefore, the Court accepts the Report's reasoning on this issue.

10

CONCLUSION

Having found Judge Fox's decision to be correct and appropriate upon de novo review, see Fed. R. Civ. P. 72(b), his Report is hereby ADOPTED. Plaintiff's motion for summary judgment is DENIED in its entirety. Defendant's motion for summary judgment is GRANTED, in part, by dismissing Plaintiff's time-barred claims as well as his Title VII and NYSHRL claims alleging race-based termination, hostile work environment, and disparate treatment. Defendant's motion is DENIED as it pertains to Plaintiff's retaliatory discharge claim and all Plaintiff's claims under the NYCHRL.

SO ORDERED.

Dated: September 30, 2012

*Loretta A. Presley*
LORETTA A. PRESKA
Chief U.S. District Judge

11