13-3625-cv  
Kirkland v. Cablevision Systems

1:09-cv-10235-LAP-KNF

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: June 19, 2014   Decided: July 25, 2014)

Docket No. 13-3625-cv

---

GARRY KIRKLAND,

*Plaintiff-Appellant,*

– v. –

CABLEVISION SYSTEMS,

*Defendant-Appellee,*

---

USDC SDNY  
DOCUMENT  
ELECTRONICALLY FILED  
DOC #: _____  
DATE FILED: _July 25, 2014_

Before: CALABRESI, LYNCH, and LOHIER, *Circuit Judges*.

Appeal from the orders, entered September 30, 2012 and August 23, 2013, of the United States District Court for the Southern District of New York (Preska, *C.J.*) granting summary judgment to Defendant-Appellee Cablevision Systems on pro se Plaintiff-Appellant Garry Kirkland's Title VII discrimination claims. Because Kirkland proffered adequate evidence that, if credited by a jury, could support a favorable verdict on his Title VII discrimination and retaliation claims, we VACATE the judgment of the District Court and REMAND for proceedings consistent with this opinion.

GARRY KIRKLAND, New York, N.Y., *pro se*.

1

> JOSEPH A. NUCCIO (RENÉ M. JOHNSON, *on the brief*)
> Morgan, Lewis & Bockius LLP, Princeton, N.J., *for Defendant-Appellee*.

PER CURIAM:

Pro se Plaintiff-Appellant Garry Kirkland appeals from two decisions by the District Court (Preska, *C.J.*) granting Defendant-Appellee Cablevision Systems ("Cablevision") summary judgment and dismissing Kirkland's Title VII discrimination and retaliation complaint. According to Kirkland, who was, in 2008, Cablevision's only African-American Area Operations Manager ("AOM"), his former employer discriminated against him and ultimately fired him based on race. Kirkland also argues that Cablevision retaliated against him for repeatedly complaining to Human Resources about racial discrimination.

The District Court granted Cablevision summary judgment on Kirkland's Title VII race discrimination claims and denied it summary judgment on his retaliation claims. *Kirkland v. Cablevision Sys.*, No. 09-cv-10235, 2012 WL 4513499, at *4 (S.D.N.Y. Sept. 30, 2012). On motion for reconsideration, the District Court granted Cablevision summary judgment on Kirkland's retaliation claims and

2

declined to exercise jurisdiction over his pendent state law claims. *Kirkland v. Cablevision Sys.*, No. 09-cv-10235, 2013 WL 4509644, at *3 (S.D.N.Y. Aug. 23, 2013).

In awarding Cablevision summary judgment, the District Court overlooked evidence raising a genuine factual dispute as to whether Cablevision's justifications for firing Kirkland were a pretext for race discrimination and retaliation. A rational jury, viewing the disputed evidence in Kirkland's favor, could find that Cablevision discriminated against Kirkland and fired him in violation of Title VII. Summary judgment is, therefore, inappropriate.

We VACATE the District Court's orders granting Cablevision summary judgment on Kirkland's discrimination and retaliation claims and dismissing Kirkland's pendent state law claims, and REMAND for trial.

**DISCUSSION**

We assume the parties' familiarity with the facts and proceedings below.

"This court reviews grants of summary judgment de novo." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We

3

review the evidence and draw all rational inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a plaintiff proceeds pro se, the court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," will the court affirm summary judgment. *Terry*, 336 F.3d at 137 (internal quotation marks and alterations omitted) (vacating, in part, a grant of summary judgment).

Kirkland's Title VII race discrimination and retaliation claims are subject to the *McDonnell Douglas* burden-shifting standard.[1] *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 110 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To state a prima facie case of race discrimination, a plaintiff must proffer evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an

---

[1] Kirkland does not appeal the District Court's dismissal of his cross-motion for summary judgment or its grant of summary judgment against him on his disparate treatment claim based on pay. Accordingly, we find those claims to be abandoned.

4

inference of race discrimination.  *See Terry*, 336 F.3d at 138.  To state a prima facie case of retaliation under Title VII, a plaintiff must proffer evidence that he engaged in a protected activity, such as complaining about race discrimination, and that his employer took an adverse action in retaliation.  *See Gorzynski*, 596 F.3d at 110.

Once an employee makes a prima facie case of either discrimination or retaliation, the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions.  *See McDonnell Douglas*, 411 U.S. at 802.  If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination or retaliation.  *Id.*  With respect to a discrimination claim, "once the [employer] has made a showing of a neutral reason for the complained of action, to defeat summary judgment . . . the [employee's] admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the [employer's] employment decision was more likely than not based in whole or in part on discrimination."  *Terry*, 336 F.3d at 138 (internal quotation marks omitted).  With respect to a retaliation claim, the employee's admissible evidence must show "that the unlawful retaliation would not have occurred in the absence of the

5

alleged wrongful action or actions of the employer." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 835 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

While the District Court recognized that Kirkland had stated prima facie cases of race discrimination and retaliation, it held that Kirkland lacked sufficient evidence of pretext to rebut Cablevision's seemingly legitimate, non-discriminatory reasons for firing him—primarily, poor performance reviews and affidavits from three regional managers whom Kirkland supervised.

We disagree with the District Court's conclusions.

The record contains enough evidence that, if credited, could support a jury's finding that Cablevision's rationale for Kirkland's treatment and eventual termination was a pretext for illegal race discrimination and retaliation.[2] For

---

[2] The District Court calculated the actionable period under Title VII as beginning April 19, 2008 (300 days prior to Kirkland's EEOC charge, which was marked "received" by that office on February 13, 2009). *See Kirkland v. Cablevision Sys.*, No. 09-cv-10235, 2011 WL 4908367, at *11 (S.D.N.Y. Oct. 14, 2011) (recommendation from Magistrate Judge Fox, adopted by the District Court). We note that the record also includes an earlier-completed EEOC "questionnaire," dated January 13, 2009. *See* Appellees' Special Appendix ("S.A.") 753. Kirkland testified that he first submitted a discrimination charge to the EEOC on December 5, 2008—the day after he was fired, S.A. 341—and that the EEOC documents dated 2009 are "amendments" to his original complaint,

6

example, Kathryn Nivins, an Asian-American female whom Robert Cockerill hired to replace Kirkland, testified that Cockerill explained Kirkland's termination by criticizing Kirkland's failure to discipline one of his regional managers (all of whom were African-American). S.A. 320-21. Nivins testified that Cockerill told her that Cockerill "ha[d] come to learn that they don't know how to police each other." S.A. 321. Nivins also testified that, during her interview, Cockerill gave her an "overview" of these managers' strengths and weaknesses, explaining that "his opinion was that [the regional office] could lighten up a bit." S.A. 321.

Other examples of proffered evidence, which could support a finding of pretext, if at least several were believed, follow:

- Kirkland swore that when he and the other AOMs—the rest of whom were white—gave presentations in September 2008 or 2009, Cockerill cut Kirkland's time short and singled out Kirkland's presentation for "heavy[]" criticism, including Cockerill's assertion that Kirkland's presentation "used a colored background and [that]

---

S.A. 928, 1235. We set aside the question of whether an earlier date might commence the preceding actionable period under Title VII. Limiting our review to the actionable period considered by the District Court, we find sufficient evidence for reversal.

7

there is no room for color in a business presentation" and "how white was better than color." S.A. 757, 1155-56.

- Kirkland swore that Cockerill and Human Resources manager Isaac Fennell falsified and back-dated documents that they used to support Kirkland's poor performance reviews "to cover up the real reason for . . . firing [him]." S.A. 927-28. *See also* S.A. 86, 1135. Kirkland's claim is made plausible by Nivins's testimony that Cockerill asked her to gather negative "information" on Kirkland "[r]ight after" Cablevision learned that Kirkland had sued. S.A. 321-22, 324. Nivins also claimed that when she told Cockerill that she "didn't have that information for him," Cockerill turned against her. S.A. 322.

- Handwritten notes from Human Resources executive Sue Crickmore include the following statement about three of Kirkland's regional managers: "These three not receptive to coaching." S.A. 574 (notes dated November 2008). The same three managers later submitted affidavits criticizing Kirkland in support of Cablevision's summary

8

  judgment motion, which Kirkland testified "[he] wouldn't be surprised" if Cockerill had falsified. S.A. 1135.

- In August 2008, Kirkland reminded Fennell "that he had yet to respond to [Kirkland] about [his February 2008] complaints of retaliation" and race discrimination. S.A. 926, 929. *See also* S.A. 330 (describing a February 2008 meeting with Fennell), 338-39, 415. Kirkland testified that, the day after his February 2008 meeting, "Isaac [Fennell] sent me the email saying he want[ed] to follow up on my issues . . . and I never heard from him again." S.A. 1133, 423. *See also* S.A. 235 (showing that an electronic meeting request, sent from Fennell to Kirkland, suggested February 7, 2008 to discuss "H[uman]r[esources] Confidential: Employee Concern").

- During a November 10, 2008 meeting with Crickmore, Kirkland again complained that no one had followed up with him about his February 2008 allegations of race discrimination, which Kirkland blamed for his poor performance review. S.A. 420-21, 337-39. Crickmore's notes from this meeting read: "G[arry] K[irkland] [:] Put in a response re: review and never heard back." S.A. 574.

9

- Crickmore's notes also could be read to support Kirkland's testimony that he complained to her directly about Cockerill "treating [him] differently" from the white AOMs, by, for example, offering to deliver a warning to Kirkland's regional managers in Kirkland's stead. S.A. 420. Crickmore's notes from November 11, 2008, entitled "Conversation with Isaac [Fennell] + Bob [Cockerill]," ask, "Did Bob and Isaac offer[] to all AOM[s] to administer warning to the[ir regional] managers?" S.A. 318.

- Fennell's report and handwritten notes from the December 4, 2008 meeting at which Fennell and Cockerill fired Kirkland include Kirkland's statement that "[t]his appears to be retaliating after [his November 2008] meeting with Sue Crickmore." S.A. 268, 270.

- Nivins testified that she believed that Cockerill hired her, despite her lack of qualifications, because Cockerill wished to "us[e]" Nivins as cover because she "ha[d] a black fiancé and [she] c[ould] fire black people in [Kirkland's former] region." S.A. 324-25, 1101.

- Nivins also testified that she believed Cockerill was "racist," a complaint she voiced to Fennell. S.A. 323. Nivins testified that

10

Fennell, in response, "blankly told [her] that Bob [Cockerill] is known as the KKK without the hood." S.A. 323-24.

A jury might credit all of this proffered evidence, some of it, or none at all. But that is "left for the jury to decide at trial." *Rivera v. Rochester Genesee Reg'l. Transp. Auth.*, 743 F.3d 11, 21 (2d Cir. 2012) (vacating, in part, summary judgment for employer). And if at least some of this evidence is believed by a jury, that jury could also conclude that, despite Kirkland's negative performance reviews, his firing was "more likely than not based in whole or in part on discrimination," *Terry*, 336 F.3d at 138 (internal quotation marks omitted), and that the unlawful retaliation would not have occurred "but-for" the alleged wrongful actions.

## CONCLUSION

We vacate the orders of the District Court granting Cablevision summary judgment on Kirkland's Title VII race discrimination and retaliation claims and dismissing his pendent state law claims. The case is remanded for proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11